# CHARLESTON.

HARRIS, ADMR *v.* CITY & ELM GROVE RAILROAD CO.

Submitted June 5, 1909. Decided March 14, 1911.

1. MASTER AND SERVANT—*Who are Fellow Servants—"Passenger."*
   A servant, employed to labor by the day in the power house of a railway company, and who is furnished with a free pass, under a rule of the company, which entitles him to ride on any of the company's cars at any time, and about his own business, during the continuance of his employment, is a passenger when riding either to or from his place of labor, and not a fellow servant of the motorman in charge of the car, and is entitled to the same rights as a passenger for hire. (p. 66).

2. CARRIERS—*Passengers—Negligence.*
   If such servant is injured, or killed, through the negligence of a motorman while so riding, the railway company is liable. (p. 73).

Error to Circuit Court, Ohio County.

Action by Oliver P. Harris against the City & Elm Grove Railroad Company. Judgment for plaintiff, and defendant brings error.

*Affirmed.*

*Russell & Russell,* for plaintiff in error.

*R. M. Addleman* and *John J. Coniff,* for defendant in error.

WILLIAMS, PRESIDENT:

Plaintiff's intestate was employed as an ash hauler at defendant's power plant and was paid two dollars a day for his services. His working hours were from 8 a. m. to 5 p. m. It was defendant's custom to supply its employees with badges which entitled them to ride on any of its passenger cars at any time, and even when traveling on their own business or pleasure. To entitle the employee to one of these badges he had to deposit with the company fifty cents which was returned to him whenever his employment with the company ceased. On the morning of October 30, 1907, deceased was riding, on his pass, on one of defendant's passenger cars from Mt. de Chantel to the place of his work at Elm Grove, when, between seven and eight o'clock,

the car ran into a gravel car standing on the main track and he was killed. His administrator brought this action for negligently causing his death, and recovered a judgment for $6,500. Defendant offered no evidence, but the case was tried on a demurrer to plaintiff's evidence and the jury found an alternative verdict. The court overruled the demurrer and rendered judgment, and defendant obtained this writ of error.

There is no, conflicting evidence, no controversy as to what the facts are, and no doubt but that the death of deceased was attributable to the negligence of defendant's employees. The case turns solely upon the legal question whether, or not, deceased was a passenger or a fellow servant with those whose negligence caused the accident, at the time he was killed. The decisions on the question whether, or not, on the state of facts shown to exist in this case, an employee occupying the position of deceased at the time he was killed is to be regarded as a passenger, or a fellow servant are not uniform; but according to the great weight of the decisions he is a passenger, and is entitled to all the rights of a passenger for hire.

His badge was equivalent to a pass, and it matters not that it may have been gratuitous. It does not appear that deceased had waived any of his rights as a passenger in accepting this pass, even granting that it might be lawful for him to do so to a limited extent, which question, however, we do not decide, still his badge, or pass, so far as the record discloses, entitled him to the same rights as a passenger for hire. *Dickinson* v. *Railway Co.,* 177 Mass. 365; *Todd* v. *Railway Co.,* 3 Allen 18; *Doyle* v. *Railroad Co.,* 162 Mass. 66; *Steamboat New World* v. *King,* 16 How. 469; *State* v. *Railroad Co.,* 63 Md. 433; *Gillenwater* v. *Railroad Co.,* 5 Ind. 339; *Transit Co.* v. *Venable,* 105 Tenn. 460; *Williams* v. *Railroad Co.,* (Utah) 54 Pac. 991; *Railroad Co.,* v. *Scott's Admr.,* (Ky) 56 S. W. 674; *Haas* v. *Railway Co.,* (Mo.) 90 S. W. 1155; *Simmons* v. *Railroad Co.,* (Ore.) 69 Pac. 440 and 1022; *McNulty* v. *Railroad Co.,* 182 Pa. St. 479.

Counsel for defendant rely upon the cases of *Sanderson* v. *Lumber Co.,* 50 W. Va. 42; *Oliver* v. *Railroad Co.,* 42 W. Va. 703; *Jackson* v. *Railroad Co.,* 43 W. Va. 380; and *Knicely* v. *Railroad Co.,* 64 W. Va. 278 (61 S. E. 811) as decisive of this case. In all of these cases the injury occurred at the very

moment while the servant was engaged in the services of his master and was evidently one of the risks which the servant had assumed while engaged in such services. In the *Oliver Case* and in the *Jackson Case,* plaintiffs were brakemen and were injured while attempting to couple cars; this was their duty and in the direct line of their employment. In the *Knicely Case* it appears that the plaintiff was injured, while loading lumber on a car standing on a track, by the negligence of the engineer in bumping other cars into the one which plaintiff was loading. Plaintiff was employed by one Cowgill who had the contract, by the job, with the railroad company for hauling and loading the lumber on the cars. The injury occurred in the direct line of his employment and at the moment when he was engaged in performing services for which he was employed. It was clearly a risk which he had assumed by his contract of service. The *Sanderson Case* is the only one of these cases which presents a state of facts somewhat similar to the facts in the present case, and there is a very important feature in that case which is lacking in the present case. Sanderson was foreman of the lumber camps of defendant who operated a short line of railroad in connection with its lumber business. It was the custom for plaintiff to ride on the log trains from the lumber camp to the mill whenever the duties of the defendant required his presence at the company's office which was located at the mill. On one occasion plaintiff was riding on the log train from the lumber camp to the mill, when at a curve in the road, the train jumped the track and plaintiff was injured. This Court held that at the time of his injury he was engaged about his master's business, that his duties to the master required him, when occasion made it necessary, to ride back and forth between the office and the lumber camp on the log train, and that he was a fellow servant with the engineer, and that the risk of danger from the engineer's negligence was one of the risks comprehended by his contract of employment, and that, therefore, he could not recover. The Court, in its opinion by Judge DENT, says:"This case depends greatly on the question as to whether the plaintiff is to be treated as a passenger on the train for fare, express or implied, or an employee engaged about his master's business and traveling on the train for the convenience of such business.

If .in the former capacity he assumed neither the risks of the master's negligence nor of the servants operating the train, and as there is evidence tending to show both the verdict could not be disturebed unless contrary to the plain preponderance of the evidence which in such an event does not exist, and the judgment would have to be affirmed." It further appears from the opinion in that case that the plaintiff admitted that his duty to his employer required him to travel on the log train between the lumber camp and the mill, and this is one of the points that decided the case against him. If the services which he had engaged to perform required him to ride on the log train, the risk of injury which might result from the negligence of other employees, engaged in operating the train, was necessarily one of the risks which he had asumed. This evidently made him a fellow servant with the trainmen. They were all engaged in a general business of getting the timber to the mill, and were so engaged at the moment the accident happened.

"One may be both a passenger and an employee of a railroad company; an employee when passing over the road at a time when actually engaged in performing duties for the company, but a passenger while not so engaged, but riding from one place to another, even though continuing all the while in a popular sense in the employment of the company." 5 A. & E. E. L. 516. See also 2 Labatt on Master and Servant, section 624, page 1832.

The capacity in which he is to be regarded depends upon whether, or not, his duties to his master required him to ride on the train, and whether, or not, the relation of master and servant existed at the moment of the injury. If his time, at the instant of the injury, did not belong to the master and if his contract of service did not contemplate that he should ride on defendant's cars as a means of furthering his master's business, then he was not a fellow servant but a passenger. The badge on which Harris was riding permitted him to ride on any one of the defendant's cars at any time, and even when engaged in his own business or pleasure. It was equivalent to a pass good as long as he continued in the service of defendant, and it is immaterial whether it was purely gratis or whether it was a part of the consideration for his services. In either event he

was entitled to the rights of a passenger because at the time of the fatal accident he owed the master no duty, he was not then engaged in performing the services for which he had been employed, nor did his duties require him to ride on defendant's cars. The proof shows that he owed service to the master from 8 A. M. to 5 P. M. His time from 5 P. M. to 8 A. M. was his own and he could employ it as he pleased. He was not obliged to ride on defendant's car to reach his place of labor but was free to use whatever means he pleased of getting to the power plant.

In *Dickinson* v. *Street Railway Co.,* decided in 1900, 177 Mass. 365, it is held that a motorman going to his dinner after his morning's work, riding free on the front platform of the defendant's car, under a rule of the company permitting its motormen in uniform, policemen, firemen, advertising agents and news-agents to ride free on any of its cars, was a passenger and not a fellow servant of the other motorman who was operating the car. The court in that case says: "At the time of the accident he did not stand in the relation of a servant to the defendant. His time was his own, and he owed the defendant no duties until the time arrived for resuming his work. It was not part of his duty to the defendant, as a servant, to take the car on which he was riding and go to a particular place for his dinner. He might go where he pleased and when he pleased during the interval before coming back to his work." The court distinguished that case from *Gilshannon* v. *Railroad Co.,* 10 Cush. 228, which counsel for defendant rely on, and also distinguished it from other Massachusetts cases and from the cases of *Manville* v. *Railroad Co.,* 11 Ohio St. 417 and *McNulty* v. *Railroad Co.,* 182 Pa. St. 479.

The following cases show a similar state of facts to those shown in the *Dickinson Case* as well as in the case we are considering, and the decisions are in line with the decision in the *Dickinson Case: Doyle* v. *Railroad Co.,* 162 Mass. 66; *Railroad Co.* v. *State, for use etc. Trainor,* 33 Md. 542; *State for use etc. Abell* v. *Railroad Co.,* 63 Md. 433; *Gillenwater* v. *Railroad Co.,* 5 Ind. 339; *Peterson* v. *Traction Co.,* (Wash.) 53 L. R. A. 586; *Transit Co.* v. *Venable,* 105 Tenn. 460; *Williams* v. *Railroad Co.,* (Utah) 54 Pac. 991; *Railroad Co.* v. *Scott's Admr.,* (Ky.) 56 S. W. 674; *Haas* v. *Railroad Co.,* (Mo.) 90 S. W. 1155;

*Johnson* v. *Railroad Co.,* (Texas) 93 S. W. 433; *Simmons* v. *Railroad Co.,* (Ore.) 69 Pac. 440 and 1022; *Enos* v. *Railway Co.,* (R. I.) 67 Atl. 5; *O'Donnell* v. *Railway Co.,* 59 Pa. St. 239; *McNulty* v. *Railroad Co.,* 182 Pa. St. 471.

In the case last cited the court distinguishes the case of *Ryan* v. *Railway Co.,* 23 Pa. St. 384, in which case the plaintiff was a laborer on a gravel train and was necessarily required, in the loading and unloading of the gravel, to travel on the gravel train from place to place, and while so traveling plaintiff was injured and the court properly held that he was in the line of his employment at the time of his injury and was not a passenger and, therefore, could not recover. *Kumler* v. *Railroad Co.,* 33 Ohio St. 150, is a similar case. But the supreme court of New York has decided the question contrary to the line of authorities above cited and perhaps the decisions of courts of last resort of some of the other states may not be in harmony with the above line of authorities. In the case of *Ross* v. *Railroad Co.,* 5 Hun. 488, the court held that a surveyor, while being transported on one of defendant's trains free of charge from his home to his place of work, was a co-employee with those in charge of the train and that he could not recover for their negligence. That case was also followed in the later case of *Vick* v. *Railroad Co.,* 95 N. Y. 267 (47 Am. Rep. 36). The court in this case followed the cases of *Seaver* v. *Railroad Co.,* 14 Gray 466 and *Tunney* v. *Railway Co.,* (Eng.) 1 C. P. 291. The *Tunney Case* was decided on the ground that it was a part of plaintiff's contract of service that he was to be carried back and forth between his home and his place of work. This, of course, would be in furtherance of his master's business and for the mutual benefit of both master and servant, and the risk attendant upon his being thus carried would be one of the risks assumed by the plaintiff in his contract of employment. But in the case which we have under consideration it does not appear that plaintiff entered into the employment in consideration of his being carried back and forth every day from his home to his place of labor on defendant's car. And it certainly does not appear that he was required to perform any service while so riding.

*Seaver* v. *Railroad Co.,* 14 Gray 466, was a case where plaintiff

was employed as a carpenter to repair fences and bridges along
defendant's road and was permitted to ride free on defendant's
train between his home and place of work, and while so riding
was injured through the negligence of the engineer; and it was
held that he could not recover. This is not a well considered
case. There was simply a *per curiam* judgment affirming the
action of the lower court and the court appears to have assigned
no particular reason for its judgment, and cited no authorities.
It is certainly not in harmony with the later Massachusetts
cases which we have cited.

The supreme court of Ohio also held in the case of *Manville* v.
*Railroad Co.,* 11 Ohio St. 417, that plaintiff, who was employed,
by the month, to render general services on its road, sometimes
in the capacity of baggagemaster, sometimes as conductor of
passenger trains and gravel trains and at such times and places
as he might be directed, and who, on being ordered to go to a
certain place on the road to take charge of a gravel train, took
passage on another train of the defendant's on which he had no
duties to perform, but simply for the purpose of going to the
place of his work, and who was injured through the negligence
of the defendant's servants in charge of the train on which he
was riding, was a fellow servant with the engineer of the train
and not a passenger, and, therefore, could not recover. This
case also seems to be in line with the New York Courts' and
against the great majority of the courts of this country and can
not be reconciled with the view we herein express, unless it is
on the ground that his contract of service was a general one
which contemplated services of different kinds and at various
places and required him to ride not on a particular train but on
any train most convenient when his services were needed at some
other point; and, moreover, that he was employed by the month,
wherefore his time could not be regarded as his own even when
not actually working for the defendant but while he was engaged
in traveling to the place of work. But whatever may be the
ground on which the court decided this case it expressly recogniz-
es the rule that the liability of defendant, in such cases, depends
upon the question whether, or not, the injured party occupies the
position of an employee· *at the time of the injury.* The court
says: "The rule is well understood, and generally admitted. Its

application is often attended with embarrassment and difficulty." And the court cites with approval the cases of *Gillenwater* v. *Railroad Co.,* 5 Ind. 339 and *Fitzpatrick* v. *Railroad Co.,* 7 Ind. 436. In the *Gillenwater Case* plaintiff was employed as a carpenter to frame and build a bridge on defendant's road, and while he was so engaged he was directed by defendant to proceed in its cars to Greenwood and assist in loading timbers for the bridge. While thus on the cars he was injured as a result of the negligence of those in charge of the train, and the court held that he was a passenger and entitled to recover.

In the *Fitzpatrick Case* the court went even further, and held that plaintiff, who was employed to load and unload gravel, and who, under agreement with the company, was carried back and forth between his boarding place and his place of work on said gravel train, was entitled to recover for an injury received as a result of the negligence of the engineer, while thus riding on the gravel train. This is a broader rule in favor of the rights of the employees than we think is sustained by the majority of the decisions. We fail to see why the plaintiff in that case was not held to be a fellow servant with the engineer of the train, because the duty he owed to the master required him to ride on this particular train and his so riding was in furtherance of the master's business, and by the terms of his contract of employment he was to be carried back and forth from his boarding place to his place of work on this particular train; this very train was one of the means or instruments of performing his service, and the risk of injury from the negligence of those in charge of it was evidently one of the risks which plaintiff had assumed. But the Indiana court held that the doctrine of fellow servantcy did not apply because the duty of the engineer in operating the train and of the plaintiff who was riding on it were of a different nature; that they were employed in different departments of labor and that, therefore, they were not fellow servants. While this distinction was at one time recognized by this Court as the law, we do not understand that it is now so recognized, since the decision in the case of *Jackson* v. *Railroad Co.,* 43 W. Va. 380, which repudiates the doctrine laid down in the earlier cases of *Madden* v. *Railroad Co.,* 28 W. Va. 610; *Daniel* v. *Railroad Co.,* 36 W. Va. 397; and *Haney* v. *Railroad*

*Co.,* 38 W. Va. 570.    See also *Railroad Co. v. Nuckols,* 91 Va. 193; *Railroad Co.,* v. *Baugh,* 149 U. S. 368;. *Railroad Co.* v. *Hambly,* 154 U. S. 349; and *Railroad Co.* v. *Charless,* 162 U. S. 356.    These cases overthrow the ·doctrine laid down by the same court in the earlier case of *Railway Co.* v. *Ross,* 112 U. S. 377.

But a decision of the present case does not call for a determination of the question of whether the relation of fellow servants would, under any state of facts, have existed between deceased and the motorman of the car on which he was riding, because of the different departments of service in which they were engaged, notwithstanding they were serving the same master.    We have assumed that, under certain conditions, the doctrine of fellow servantcy would be properly applied between an engineer or conductor in charge of a train, or a motorman in charge of a car, and another employee engaged in a different line of service for the same master.    This principle seems to be recognized by the courts in nearly all of the decisions.    But the case turns upon the question of whether, or not, the relation of fellow servant existed between the deceased and the motorman, or conductor, of the car on which he was riding, *at the time of the fatal accident.*    We find upon an examination of the authorities that by a vast majority of the courts of last resort of this country it has been held that under circumstances similar to those appearing in this case such relationship does not exist.

The fact that plaintiff's intestate was riding on defendant's car going to his place of work did not affect his rights as a passenger.    His rights were the same as if he had been going to some other place and purely for his own business or pleasure.· It does not appear that his contract of employment required. him to ride on this or any other of defendant's cars.    He, therefore, could not have contemplated the risk of injury from so riding by the terms of his employment.    His· fatal injury occurred before eight o'clock, which was the time when his service for the day began.    Defendant at that time had no control over the movements of deceased and no right to direct his action.    Therefore, he must be regarded in law as a passenger and entitled to the same rights as a passenger for hire.

The judgment of the lower court will be affirmed.

*Affirmed.*