WILLIAMS, Appellant, v. UNION SWITCH SIGNAL COM-PANY, Respondent.

(158 N. W. 901.)

(File No. 3781.   Opinion filed July 29, 1916.)

1.  **Carriers—Master and Servant—Negligence of Fellow Servant—Vice-principal—"Passenger."**

Where defendant, a switch and signal installing company, was engaged in installing a system of electric signals along a railroad right of way, and its crew foreman was transporting its servant on a gasoline rail car from his place of work to his noon-day meal at defendant's boarding camp, not as part of his employment of cleaning out battery wells, but as a mat-ter of convenience to him, and as part of the compensation for his labor under the contract of employment, and the servant was injured through the crew foreman throwing the brakes too sharply, **held**, that such servant was a "passen-ger," and his injury was not caused by the negligence of a fellow servant; since, while the servant and said crew fore-man might have been fellow servants while engaged in install-ing said signals, they were no longer such when they ceased such labor and boarded the car to go to the boarding place, and the foreman thereby took the place of his principal.

McCoy, J. and Smith, J., concurring in the result.

Whiting, J., and Gates, J., dissenting.

2.  **Trials—Pleadings—Master and Servant, or Carrier and Pas-senger?—Negligence of Fellow Servant—Theory of Trial.**

Where, in a suit for damages for negligence of an alleged fellow servant of a switch and signal installing company, there were certain allegations in the complaint appearing to have been drawn upon the theory of defendant's crew foreman's negligence, and of his incompetency to perform the duties assigned to him, but there were other paragraphs stating facts sufficient to constitute a cause of action upon the theory that the relation of carrier and passenger existed between plaintiff and defendant at the time of the injury, the objection, that in

order to recover, it must be shown that plaintiff and said foreman were fellow servants, that the injury must have been shown to have been the result of the foreman's negligence, and that he was so incompetent that his principal was guilty of negligence, is not tenable; although it appears that the trial court tried the case upon the theory of negligence of a fellow servant.

3. **Master and Servant—"Passenger," and "Fellow Servant," Distinguished.**

When an employee is being carried in his employer's vehicle in connection with, or in consequence of, his employment, he is not a "passenger," but a fellow servant of those operating the vehicle; while if a person is traveling as a mere matter of convenience to himself, although he is being carried free by his employer, he is to be considered a "passenger."

4. **Master and Servant—Plaintiff as Passenger—Negligence—Sufficiency of Evidence—Directing Verdict.**

On the theory that the employee foreman of defendant was its vice-principal, and that plaintiff was a passenger of defendant and not occupied at the time as an employee, held, that evidence, which if standing alone, and if believed by the jury, showed that while a gasoline rail car, on which plaintiff was riding to a place where defendant served meals to its employees, was thrown from the car while it was moving and without warning of what was about to take place, by the cutting off of power and applying of the brakes by said vice-principal, was sufficient to warrant a verdict for plaintiff; and said evidence should have gone to the jury.

Whiting, J., and Gates, J., dissenting.

Appeal from Circuit Court, Brown County. HON. THOMAS L. BOUCK, Judge.

Action by S. W. Williams, against the Union Switch and Signal Company, a corporation, to recover damages for personal injuries to plaintiff as a passenger of defendant. From a judgment for defendant, and from an order denying a new trial, plaintiff appeals. Judgment reversed and new trial granted.

*Campbell, Walton, McNulty and Campbell*, for Appellant.

*E. B. Harkin*, for Respondent.

(1) To point one of the opinion, Appellant cited: Peterson v. Seattle Traction Co., 63 Pac. (Wash.) 539, 53 L. R. A. 586; O'Bierne v. Stafford, 87 Atl. (Conn.) 743, 46 L. R. A. (N. S.) 1183; Pigeon v. Lane, 67 Atl. (Conn.) 886, 11 Ann. Cas. 371; Putnam v. Pacific Monthly Co., 136 Pac. (Or.) 835; McNulty v. Penn. R. Co., 38 Atl. (Pa.) 524, 38 L. R. A. 376; Dickinson

v. Railway Co., 177 Mass. 365, 52 L. R. A. 326; Hebert v. Portland R. Co., 69 Atl. (Me.) 266, 13 Ann. Cas. 887; Coleman v. Minneapolis Street Ry. Co., 113 Minn. 364, 129 N. W. 762; Foutz v. Los Angeles, 140 Pac. 20; Russ v. Wabash Western Ry. Co., 18 L. R. A. (Mo.) 823; Tills v. Great Northern Ry. Co., 97 Pac. (Wash.) 737; Phillips v. International Harvester Company, 117 N. W. (S. D.) 146; Headline v. Great Northern Railway Co., 128 N. W. (Minn.) 1116.

Respondent cited: Civ. Code, Sec. 1449; Cal. Civ. Code, Sec. 1970; Solleim v. Norbeck & Nicholson, 147 N. W. 266; Northern Pacific Ry. Co. v. Peterson, 162 U. S. 364; IV Ruling Case Law 476; Knicely v. West Virginia Midland Ry. Co. 17 L. R. A. (N. S.) 370; Harris v. City and Elmgrove Ry. Co., 70 S. E. 859.

(2)   To point two of the opinion, Appellant cited: Laying v. Mineral Spring Co., 67 Pac. (Cal.) 48; Gibson v. Furniture Co., 45 Pac. (Cal.) 5.

Respondent cited: Hall v. Northern Pac. Ry. Co. (N. D.) 111 N. W. 609; Civ. Code, Sec. 1449.

(4)   To point four of the opinion, Appellant cited: Smith v. Sioux City, etc., R. Co., 19 N. W. (Neb.) 638; Roberts v. Ruh, 14 N. W. (S. D.) 1097; Sioux Banking Co. v. Kendall, 6 S. D. 543, 62 N. W. 377; Carroll v. Nisbet, 9 S. D. 497, 70 N. W. 634.

Rsepondent cited: McKeever v. Homestake Mining Co., 10 S. D. 599.

POLLEY, P. J.   This action was brought for the recovery of damages for personal injuries alleged to have been caused by the negligence of defendant. It is alleged in the complaint, that at and for some time prior to the injury, defendant, a corporation, was engaged, as an independent contractor, in installing a system of electric signals along the right of way of the Chicago, Milwaukee & St. Paul Railroad between Milbank and Aberdeen. Plaintiff was employed as a laborer in the performance of said work. The defendant maintained a boarding camp for the purpose of boarding the men so engaged, and also maintained a small gasoline-propelled car for the purpose of conveying said employes to and from their work. This car was in charge of

and was operated by one Frizell, who acted as foreman of the crew with whom plaintiff worked, and who is alleged to have acted in the capacity of vice-principal for the defendant. On the day of the accident that resulted in plaintiff's injury, he, with others, was being conveyed from the place where they had been at work to the said camp, for their noonday meal. Plaintiff was riding in the place asigned to him for that purpose (on the front end of the said car), and alleges that the said car was moving at a rate of speed of 20 miles or more per hour, and that, "while traveling at a speed of 20 miles per hour, or more, the said defendant, by its agent, the said Frizell, negligently and carelessly and without warning, applied the brakes to said car, thus causing the same to stop or halt very suddenly and in a dangerous manner, and caused this plaintiff to be thrown from the said car and to run against and upon the same, thereby causing to and inflicting upon this plaintiff" the injury complained of. Plaintiff further alleges that, at the time of the said accident, the said Frizell was inexperienced in the operation of cars such as the one then in use, and that he was incompetent and unable to properly operate the same; that the defendant had full knowledge of the said incompetency of the said Frizell and of his inability to operate said car; that plaintiff had no knowledge at that time of the lack of experience and inability of the said Frizell; and that he boarded said car at said time relying upon and fully believing that defendant had performed its duty to plaintiff in providing for him a reasonably safe means of transportation. Plaintiff alleges that, as a part of his contract of employment, defendant agreed to furnish transportation of plaintiff between said boarding camp and the various places along said line of railway where said work was being carried on.

Defendant denied all the material parts of the complaint, except its corporate existence and the employment of plaintiff, and, by way of affirmative defense, alleged that plaintiff's injuries resulted solely from his own carelessness and negligence in his manner of riding on the said car. At the close of plaintiff's evidence, defendant moved for a directed verdict upon the grounds: First, that the evidence did not show any negligence on the part of the said Frizell in the operation or management of the said car; second, that the evidence did not show any negli-

gence on the part of the defendant in the employment of said Frizell; and, third, that the evidence showed conclusively that plaintiff's injury resulted solely from his own negligence. The motion was denied at that time, but it was renewed at the close of all the evidence, when the trial court directed a verdict for defendant, and, from the judgment entered upon such verdict, plaintiff appeals.

[1-4] It is the contention of respondent that appellant and the said Frizell were fellow servants, and that, before appellant can recover, he must show, not only that the injury complained of was the result of Frizell's negligence (a fact which respondent does not admit), but that he was so incompetent to perform the duties assigned to him that respondent was guilty of negligence in employing him for that purpose. It is further contended that the complaint was drawn, and the case was tried, upon this theory; and it is evident that this theory was adopted by the trial court. It is true there are certain allegations in the complaint that appear to have been drawn upon this theory. These allegations are found in paragraphs 3 and 7 of the complaint, but there are other paragraphs stating facts sufficient to constitute a cause of action upon the theory that the relationship of carrier and passenger existed between appellant and respondent at the time of the injury. It is alleged that, as a part of the contract of employment, respondent agreed to furnish appellant transportation to and from the place of work; that the said gasoline car was maintained and operated for the purpose of transporting appellant, and other laborers, to and from said work; that it was the duty of the said · Frizell to handle, manage, and operate the said car while said laborers were being so conveyed; and that no one but Frizell was permitted to, or did, in any way, participate in the control or management of said car. These allegations are fully supported by the evidence. Appellant took no part in the operation of the said car and had no duty whatever to perform in connection with the operation thereof. At the time of the accident, he was being conveyed by defendant from his place of work to his noonday meal. This was being done by defendant pursuant to the terms of the contract of employment. Defendant was under obligation to furnish this transportation, though appellant was under no obligation to avail himself of the opportunity to ride.

He could have walked to camp, or he could have carried a lunch out with him in the morning and not have gone to camp at that time at all. The transportation was furnished as a matter of convenience to him and, by the terms of the contract of employment, was a part of the compensation for his labor. The car was not an instrumentality for the performance of the work in which appellant was engaged, but was merely a means of transportation to and from the place of work. This state of facts, appellant contends, constitutes the relationship of carrier and passenger between the appellant and respondent, and not the relationship of fellow servants between the appellant and the said Frizell. If this contention is correct, then it is immaterial whether respondent knew Frizell to be an incompetent workman or not. If respondent stood in the relationship of carrier, it was its duty, in the first instance, to exercise reasonable care in transporting appellant and to take reasonable precautions for his safety.

Just what constitutes the relationship of carrier and passenger has been a subject of much discussion by the courts in recent years, and the conclusion reached are not entirely harmonious. It sems to be generally agreed, however, that, when an employee is being carried in his employer's vehicle in connection with, or in consequence of, his employment, he is not a passenger, but a fellow servant of those operating said vehicle. On the other hand, if a person is traveling as a mere matter of convenience to himself, although he is being carried free by his employer, he is to be considered a passenger. 4 R. C. L. § 476, and cases cited. Respondent contends that when the accident occurred appellant was receiving pay for his time, and respondent was entitled to his services. This contention is based upon the fact that the accident occurred at about 11.30 a| m. But this is not the test. No part of the service for which appellant was receiving pay was to be performed while he was on the car. He was not expected or required to take any part whatever in the operation of the car, and, while on said car, could perform no part of the service for which he was employed. His work was at various points along the railroad right of way, and no place else. He could not commence work in the morning until he arrived at the place where his work was to be performed. Neither was he required to perform any more work after he was directed to board

said car and go to camp. His labor ceased when they started for camp and did not commence again until he returned to the place of work, and it is immaterial whether this was at 11:30 or 12 o'clock. Louisville & N. R. Co. v. Scott's Adm's, 108 Ky. 392, 56 S. W. 674, 22 Ky. Law Rep. 30, 50 L. R. A. 381; Hebert v. Portland R. Co., 103 Me. 315, 69 Atl. 266, 125 Am. St. Rep. 297, 13 Ann. Cas. 886 and note; Dickinson v. West End St. Ry. Co., 177 Mass. 365, 59 N. E. 60, 52 L. R. A. 326, 83 Am. St. Rep. 284; Transit Co. v. Venable, 105 Tenn. 460, 58 S. W. 861, 51 L. R. A. 886; Marshall v. Nashville Ry. & L. Co., 118 Tenn. 254, 101 S. W. 419, 9 L. R. A. (N. S.) 1246, 12 Ann. Cas. 675; Harris v. City & E. G. R. Co., 69 W. Va. 65, 70 S. E. 859, 50 L. R. A. (N. S.) 706 note, Ann. Cas. 1912D, 59. See, also, Peterson v. Seattle Traction Co., 23 Wash. 615, 63 Pac. 539, 65 Pac. 543, 53 L. R. A. 586, where the cases on this subject are collected and reviewed at length.

It may be true, as claimed by respondent, that the said Frizell worked with the other employes while engaged in the installation of the said electrical signals; that he did the same kind, and an equal amount, of work as the other workmen, and it may be that that fact would constitute the relationship of fellow servants so long as they were thus engaged; but, when they ceased such labor and boarded said car, a new situation arose. Appellant and Frizell ceased to be colaborers or coemployees, and Frizell took the place of his principal. Appellant was then being conveyed to camp by respondent pursuant to a duty that respondent owed him and in the performance of which Frizell was occupying the position of the defendant and was no longer a fellow servant of appellant. Under this theory of the case, was there sufficient evidence to warrant the jury in finding for appellant? He testified that, just prior to the accident, the car was running at a rate of 20 or more miles per hour; that he was riding on the front end of the car and looking forward; that, while the car was so moving and without any warning of what was about to take place, Frizell cut off the power and applied the brakes; that this brought the car to an abrupt stop; and that it was this action of the car that threw him off and caused his injury. The evidence standing alone, if believed by the jury, would warrant a verdict for appellant; and, while the witnesses on behalf of respondent

contradicted some of appellant's testimony, this presented only a question of veracity or the recollection of the witnesses as to what took place at that time, and should have been submitted to the jury.

The judgment appealed from is reversed, and a new trial is awarded.

McCOY, J. I concur in the result reached by Justice POLLEY. I am of the view that this is not one of the ordinary hand-car cases where the employee, as a part of the labor he is hired to perform, assists in running the hand car to and from certain locations, such as is the case where sectionmen going from place to place, within the scope of their employment, run or assist in running the car for the purposes of facilitating the performance of the labor which they, as employees, are hired to perform. In such cases the hand car is a mechanical implement, appliance, or tool used by the employees in the performance of their duties; and, under such circumstances, the employee riding upon the hand car, when an injury occurs, is deemed a servant, within the fellow-servant rule. But where the hand car is not being so used, and was being used for some other purpose outside of the scope of the employment, the employee, riding on such car for purposes outside of and disconnected from the performance of the special labor constituting his employment, when injury occurs, will be deemed a passenger, and the rules of law governing the duties towards passengers are applicable. In this case plaintiff was employed to clean out battery wells. Defendant, at the time of the accident, was transporting plaintiff, not as a part of his employment of cleaning out battery wells, but was transporting him to and from a boarding house operated by defendant. Under these circumstances, I am of the view that plaintiff, under the principle maintained in the cases cited by Justice POLLEY, was a passenger at the time of the accident in question.

SMITH, J., concurs.

WHITING, J. (dissenting). I cannot agree that the parties hereto occupied the relation of passenger and carrier at the time of the accident. If the premise from which my colleague has started were correct, his conclusion would be sustained by a part of the decisions cited. Some of the decisions have no possible

application to the facts of this case. This is noticeably true of Louisville, etc., v. Scott's Adm'r, Marshall v. Nashville, etc., and Dickinson v. Railway Co. But if his premise is wrong his conclusion finds no support in any one of the authorities cited. My colleague says:

"Defendant was under obligation to furnish this transportation, though appellant was under no obligation to avail himself of the opportunity to ride. He could have walked to camp, or he could have carried a lunch out with him in the morning and not have gone to camp at that time at all. The transportation was furnished as a matter of convenience to him and, by the terms of the contract of employment, was a part of the compensation for his labor."

I believe that, under the contract entered into, when construed in the light of the work to be done thereunder, appellant was under obligation to avail himself of the opportunity to ride. Under the contract, it was his duty to ride on this car to and from work, morning and evening, and to and from the place for meals at the noon hour. The transportation was not "furnished as a matter of convenience to" appellant, but as a necessary and essential element in the carrying out of the enterprise in which appellant and his fellow workmen were engaged. The work was to be done all along the line of railway from Milbank to Aberdeen; the respondent was to furnish board and lodging for the men, and was to take them back and forth to and from work. At the time of the accident, their headquarters were at Webster, and they were working near Andover, the second station west of Webster. Appellant could not, from the very nature of the circumstances, have lodged and boarded where he desired. It was absolutely necessary for him, in properly fulfilling his contract and as a part thereof, to make use of the transportation offered. There is not a case cited by appellant where it is held that the relation of passenger and carrier exists under such circumstances; but wherever a contract, such as the one before us, has been before the court, it has always been held that the relation of master and servant existed during the period of transportation. The distinction between where it is the duty of the injured party to ride, and where it is his privilege to do so, is clearly noted in the following cases, some of which are among the cases cited by

my colleague; Enos v. Railway Co., 28 R. I. 291, 67 Atl. 5, 12 L. R. A. (N. S.) 244; McNulty v. Railway Co., 182 Pa. 479, 38 Atl. 524, 38 L. R. A. 376, 61 Am. St. Rep. 721; Dickinson v. Railway Co., 177 Mass. 365, 59 N. E. 60, 52 L. R. A. 326, 83 Am. St. Rep. 284; Harris v. City, 69 W. Va. 65, 70, S. E. 859, Ann. Cas. 1912D, 59; Hebert v. Railway Co., 103 Me. 315, 69 Atl. 266, 125 Am. St. Rep. 297, 13 Ann. Cas. 886. In the McNulty Case, the court held that the relation of passenger and carrier existed between the parties because the plaintiff "was under no obligation to ride on the cars." The court distinguished it from a former case before the same court where it was held that the relation of master and servant existed, and stated that the plaintiff in such former case was held to be a servant because:

"It was part of * * * (his) contract of service that he was to return each day to Birmingham by the pick-up train, to be ready to start upon his work the next morning'."

And in the Dickinson Case the court held the plaintiff to be a passenger, and not a servant, because:

"It was no part of his duty * * * as a servant to take the car on which he was riding and go to the particular place for his dinner."

I must confess my inability to reconcile the two different positons taken in the majority opinion. First it is held that, in the matter of transportation—that out of which the accident resulted—the relation of master and servant did not exist. Then it is held that there is a liability because "appellant and Frizell ceased to be colaborers or coemployees, and Frizell took the place of his principal." The rule holding the master liable for injuries to his servant through the act of his vice principal can have no application where the relation between the principal and the party injured is other than that of master and servant; there can be no vice principal where there is no servant.

GATES, J., concurs in the views expressed by Judge WHITING.